RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ROBERTA LINDENBAUM, individually and on behalf of
all others similarly situated,

                    *Plaintiff-Appellant*,

UNITED STATES OF AMERICA,

                    *Intervenor-Appellant*,

      *v.*

REALGY, LLC, a Connecticut limited liability
company, dba Realgy Energy Services,

                    *Defendant-Appellee*.

No. 20-4252

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02862—Patricia A. Gaughan, Chief District Judge.

Argued:  July 29, 2021

Decided and Filed:  September 9, 2021

Before:  GIBBONS, STRANCH, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Ellen Noble, PUBLIC JUSTICE, PC, Washington, D.C., for Appellant.  Lindsey Powell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. Ryan D. Watstein, KABAT CHAPMAN & OZMER LLP, Atlanta, Georgia, for Appellee. **ON BRIEF:**  Ellen Noble, Leah Nicholls, PUBLIC JUSTICE, PC, Washington, D.C., Katrina Carroll, CARLSON LYNCH LLP, Chicago, Illinois, Adam T. Savett, SAVETT LAW OFFICES LLC, Allentown, Pennsylvania, for Appellant.   Lindsey Powell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.  Ryan D. Watstein, Matthew A. Keilson, KABAT CHAPMAN & OZMER LLP, Atlanta, Georgia, Paul A. Grammatico, KABAT CHAPMAN & OZMER LLP, Los Angeles, California, for Appellee.  Scott L. Nelson, Allison M. Zieve, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., Thomas M. Fisher, OFFICE OF THE INDIANA ATTORNEY GENERAL, Indianapolis, Indiana, Tara

Twomey, NATIONAL CONSUMER LAW CENTER, Boston, Massachusetts, David J. Carey, AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, Columbus, Ohio, Jessica L. Ellsworth, HOGAN LOVELLS US LLP, Washington, D.C., Roman Martinez, LATHAM & WATKINS LLP, Washington, D.C., Michael H. Pryor, BROWNSTEIN HYATT FARBER SCHRECK, LLP, Washington, D.C., Shay Dvoretzky, Parker A. Rider-Longmaid, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Washington, D.C., for Amici Curiae.

_____

**OPINION**

_____

JOHN K. BUSH, Circuit Judge.  Courts do not rewrite, amend, or strike down statutes. We only "say what the law is."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  The district court held that a court conducting severability analysis defies that time-honored rule and instead "eliminat[es]" part of a statute.  *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290, 297 (N.D. Ohio 2020).  It does not.  We therefore reverse.

I.

In 1991, Congress prohibited almost all robocalls to cell phones and landlines.  *Barr v. Am. Ass'n of Pol. Consultants*, *Inc. (AAPC)*, 140 S. Ct. 2335, 2344 (2020) (plurality opinion); 47 U.S.C. § 227(b)(1)(B).  That seemed to change in 2015, when Congress attempted to enact an amendment to those broad prohibitions to allow robocalls if they were made "solely to collect a debt owed to or guaranteed by the United States."  47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B).

The amendment, however, was unconstitutional.  So held the Supreme Court in *AAPC*. The Court determined that adding the exemption for government-debt robocalls would cause impermissible content discrimination.  *AAPC*, 140 S. Ct. at 2347 (plurality opinion); *id.* at 2357 (Sotomayor, J., concurring in the judgment); *id.* at 2363 (Gorsuch, J., concurring in part and dissenting in part).  The Court also held that the exception was severable from the rest of the restriction, leaving the general prohibition intact.  *Id.* at 2356 (plurality opinion); *id.* at 2357 (Sotomayor, J., concurring in the judgment); *id.* at 2363 (Breyer, J., concurring in part and dissenting in part).  During its severability analysis, the three-justice plurality offered a brief footnote musing on the liability of parties who made robocalls between the exception's enactment and the Court's *AAPC* decision.  *Id.* at 2355 n.12 (plurality opinion).  Those justices

thought that "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception," but that their decision "does not negate the liability of parties who made robocalls covered by the robocall restriction."[1] *Id.*

In late 2019 and early 2020, Roberta Lindenbaum received two robocalls from Realgy, LLC advertising its electricity services. She sued, alleging violations of the robocall restriction. After the Supreme Court decided *AAPC*, Realgy moved to dismiss the case for lack of subject-matter jurisdiction. The district court granted the motion. It reasoned that severability is a remedy that operates only prospectively, so the robocall restriction was unconstitutional and therefore "void" for the period the exception was on the books. *Lindenbaum*, 497 F. Supp. 3d at 298–99. Because it was "void," the district court believed, it could not provide a basis for federal-question jurisdiction. *Id.* at 299. Lindenbaum timely appealed. The United States intervened in support of Lindenbaum to defend its statute.

II.

Realgy moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but its motion "is more accurately considered a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1330 (11th Cir. 2019); *cf. Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (treating a motion to dismiss as a motion for summary judgment). After all, a district court has jurisdiction when "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 685 (1946)). That is the case here. If Lindenbaum's arguments about the continuing vitality of the robocall restriction from 2015 to 2020 are correct, she is entitled to relief. So we will treat the district court's dismissal as one under Rule 12(b)(6)

---

[1]No other justice indicated agreement with that dictum, so it is relevant only to the extent of its power to persuade. *See Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 966 n.2 (6th Cir. 1991) ("[A] concurring opinion has no binding authority.").

and review it de novo, assuming all facts in the complaint to be true. *West v. Ky. Horse Racing Comm'n*, 972 F.3d 881, 886 (6th Cir. 2020).

III.

On the merits, Realgy contends that severability is a remedy that fixes an unconstitutional statute, such that it can only apply prospectively. As a fallback, it argues that if it can be held liable for the period from 2015 to 2020, but government-debt collectors who lacked fair notice of the unlawfulness of their actions cannot, it would recreate the same First Amendment violation the Court recognized in *AAPC*. Neither argument has merit.

A. SEVERABILITY

The judicial power is the "power . . . to decide" cases through "dispositive judgments." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995) (cleaned up). When making those judgments, we must determine the legal rule that applies to the parties before us. That requires us to "say what the law is." *Marbury*, 5 U.S. at 177. And to say what the law is, we must exercise "the negative power to disregard an unconstitutional enactment." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). After disregarding unconstitutional enactments, we then determine what (if anything) the statute means in their absence—what is now called "severability" analysis. *See Tilton v. Richardson*, 403 U.S. 672, 684 (1971). But those steps are all part of explaining what the statute "has meant continuously since the date when it became law" and applying that meaning to the parties before us. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994). Courts do not change statutes.

Instead, as the Supreme Court has made clear in recognizing the power of judicial review, the Constitution itself displaces unconstitutional enactments: "a legislative act contrary to the constitution is not law" at all. *Marbury*, 5 U.S. at 177; *see also Ex parte Siebold*, 100 U.S. 371, 376 (1879). This foundational principle of law is far from the "legal fiction" Realgy argues it to be—the Court continues to reaffirm that principle to this day. *See Collins v. Yellen*, 141 S. Ct.

1761, 1788–89 (2021) ("[T]he Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment . . .").[2]

Because unconstitutional enactments are not law at all, it follows that a court conducting severability analysis is interpreting what, if anything, the statute has meant from the start in the absence of the always-impermissible provision. *See Tilton*, 403 U.S. at 684 (citing *Champlin Ref. Co. v. Corp. Comm'n*, 286 U.S. 210, 234 (1932)). The Court's standard for severability questions supports that understanding. It looks to Congress's intent, a hallmark of any federal statutory interpretive endeavor. *See Murphy v. NCAA*, 138 S. Ct. 1461, 1482 (2018). And when assessing the severability of state statutes, the court looks to the intent of the state legislature. *See Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam). If severability were a remedy for violation of the federal constitution, then federal courts could do it without reference to state law; because it is interpretive, federal courts must apply the state's law of severability.

Therefore, like any judicial interpretation, a court's severability analysis is subject to the "fundamental rule of 'retrospective operation' that has governed '[j]udicial decisions . . . for near a thousand years.'" *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 94 (1993) (alterations in original) (quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting)).

Realgy's argument that severance is instead a remedy misconstrues the nature of remedies. Remedies consist of "an injunction, declaration, or damages." *See AAPC*, 140 S. Ct. at 2351 n.8 (plurality opinion).[3] Further, that "[t]he relief the complaining party requests does not circumscribe" the severability inquiry also demonstrates that it cannot be a remedy. *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 427 (2010); *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 n.29 (2017) ("That Morales-Santana did not seek this outcome does not restrain the

---

[2]This principle makes the severability inquiry clearer in the case of an unconstitutional amendment. Because it is "a nullity," it is "powerless to work any change in the existing statute"; the original statute "must stand as the only valid expression of the legislative intent." *Frost v. Corp. Comm'n*, 278 U.S. 515, 526–27 (1929); *see also Truax v. Corrigan*, 257 U.S. 312, 342 (1921); *Eberle v. Michigan*, 232 U.S. 700, 705 (1914).

[3]The Court has, at times, described severance as a "remedy." *See, e.g.*, *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2207 (2020); *United States v. Booker*, 543 U.S. 220, 245 (2005). But it still applied the rule its severability analysis generated to "all cases on direct review." *Booker*, 543 U.S. at 268. So the term "remedy" was used—admittedly confusingly—as shorthand for the interpretation Congress would have wanted had it known of the statute's constitutional problem, not in the traditional sense of a true remedy granted in a single case to make a party whole. *Id.* at 246.

Court's judgment. The issue turns on what the legislature would have willed."). In *AAPC*, the Court severed the exception in a way that gave AAPC none of the relief it sought. 140 S. Ct. at 2344 (plurality opinion); *id.* at 2365–66 (Gorsuch, J., concurring in part and dissenting in part) (criticizing that outcome). That cannot have been a remedy.

Because severance is not a remedy, it would have to be a legislative act in order to operate prospectively only. One district court that accepted arguments like Realgy's forthrightly acknowledged that premise, explaining that "a severability decision is quasi-legislative, and thereby prospective." *Cunningham v. Matrix Fin. Servs., LLC*, No. 4:19-CV-896, 2021 WL 1226618, at *6 (E.D. Tex. Mar. 31, 2021). Realgy is less candid, but the cases on which it relies make the necessity of that premise equally clear. *Grayned v. City of Rockford*, for example, rejected an argument that a subsequent legislative amendment affected the "facial constitutionality of the ordinance in effect when appellant was arrested and convicted." 408 U.S. 104, 107 n.2 (1972); *see also Morales-Santana*, 137 S. Ct. at 1699 n.24 (describing *Grayned* as showing that "a defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity"). Similarly, *Landgraf v. USI Film Products* dealt with the question whether a legislative enactment applies retroactively. 511 U.S. 244, 265 (1994). Neither has any bearing on this case. "Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy." *United States v. Rutherford*, 442 U.S. 544, 555 (1979). In short, severance is interpretation, not legislation.

To sum up, the district court erred in concluding that, in *AAPC*, the Supreme Court offered "a remedy in the form of eliminating the content-based restriction" from the TCPA. *Lindenbaum*, 497 F. Supp. 3d at 297. Instead, the Court recognized only that the Constitution had "automatically displace[d]" the government-debt-collector exception from the start, then interpreted what the statute has always meant in its absence. *See Collins*, 141 S. Ct. at 1788. That legal determination applies retroactively. *Harper*, 509 U.S. at 94.

B. FIRST AMENDMENT

There are exceptions to the general rule that judicial decisions apply retroactively. Sometimes, "a previously existing, independent legal basis (having nothing to do with retroactivity)" will preclude the application of a newly recognized rule. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759 (1995). Realgy argues that the First Amendment provides one such basis here. As a premise, it contends that government-debt collectors have a due-process defense to liability because they did not have fair notice of their actions' unlawfulness. If that is so, Realgy claims, then holding private-debt collectors liable would create the same content-discriminatory system that the Court held unconstitutional in *AAPC*: it would be liable, and government-debt collectors would not. We need not decide whether Realgy is correct about government-debt collectors because this case does not present the issue. Even assuming that it is correct, that does not create a First Amendment problem.

The First Amendment limits government regulation of speech. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). In *AAPC*, it applied because the robocall restriction regulated speech. 140 S. Ct. at 2346 (plurality opinion). Here, by contrast, the centuries-old rule that the government cannot subject someone to punishment without fair notice is not tied to speech. *See, e.g.*, *Landgraf*, 511 U.S. at 282–83 (discussing that principle with regard to employer liability under Title VII); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17–18 (1976) (same for retroactive liability for mining-based illnesses). Whether a debt collector had fair notice that it faced punishment for making robocalls turns on whether it reasonably believed that the statute expressly permitted its conduct. That, in turn, will likely depend in part on whether the debt collector used robocalls to collect government debt or non-government debt. But applying the speech-neutral fair-notice defense in the speech context does not transform it into a speech restriction.

IV.

In 1982, the Supreme Court considered "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively" so obvious as to be "familiar to

every law student." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982). Today, we clarify that severability is no exception. We reverse.